# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| TRAVIS HOLLSTEN,<br><br>                    Plaintiff,<br>v.<br><br>AMY TODDISH, JESSICA STANDKE, JAMIE VANDER SANDEN, LT. SADOWSKI, ST. RUSCZINSKY, LT. BAATZ, BRIAN CAHAK, CAPT. CHRISTIANSON, TODD GILLINGHAM, SARAH FELTES, SGT. HARPER, WALTHERS, JOHN DOE, and UNIT W IUS,<br><br>                    Defendants. | Case No. 24-CV-1543-JPS<br><br>**ORDER** |

      Plaintiff Travis Hollsten, a former inmate, filed a pro se complaint under 42 U.S.C. § 1983 alleging that Defendants violated his constitutional rights by holding him past his prison release date. ECF No. 1. Plaintiff paid the filing fee in full on March 5, 2025. As such, the Court will deny as moot Plaintiff's motion to proceed without prepayment of the filing fee. ECF No. 4. On March 26, 2025, Plaintiff submitted a signed copy of the complaint. ECF No. 8. The remainder of this Order screens Plaintiff's signed complaint.

1.     **FEDERAL SCREENING STANDARD**

      Under the Prison Litigation Reform Act, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief

may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether a complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes pro se complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

2. **PLAINTIFF'S ALLEGATIONS**

Plaintiff brings this case against Defendants Amy Toddish ("Toddish"), Jessica Standke ("Standke"), Jamie Vander Sanden ("Vander Sanden"), Lt. Sadowski ("Sadowski"), St. Rusczinsky ("Rusczinsky"), Lt.

Baatz ("Baatz"), Brian Cahak ("Cahak"), Capt. Christianson ("Christianson"), Todd Gillingham ("Gillingham"), Sarah Feltes ("Feltes"), Sgt. Harper ("Harper"), Walthers, John Doe, and Unit W IUS. ECF No. 8 at 1.[1] On September 3, 2024, Oshkosh Correctional Records Supervisors Standke and Vander Sanden and Records Officer Toddish were deliberately indifferent to Plaintiff's illegal imprisonment. *Id.* These individuals refused to release Plaintiff from prison despite Judge Zakowksi's decision granting Plaintiff habeas corpus. Plaintiff's sentence had expired in 2022, many months prior to Plaintiff's revocation in 2023. *Id.* These individuals manufactured an obviously obtuse justification to keep Plaintiff imprisoned past his release date.

Instead of releasing Plaintiff, Standke wrote a confusing and obtuse letter to the judge explaining that Plaintiff's sentence was not complete. *Id.* at 2. Standke wanted to be the mastermind who did everything in her power to keep Plaintiff imprisoned past his release date even though she knew his sentence was complete. *Id.* The judge did not respond to Standke for seventeen days because he had a grudge against Plaintiff and did not care about him. *Id.* Toddish and Sadowski attended a meeting with Plaintiff regarding his request for release. *Id.* Both individuals knew that Plaintiff was being held past his release date; Plaintiff had documents that conclusively established that his sentence expired in 2023. Toddish and Sadowski both could have done something to help Plaintiff, but they deliberately chose not to help him. *Id.*

---

[1]Plaintiff submitted a signed complaint months after the initial complaint. The Court screens this complaint as the operative complaint going forward.

On September 9, 2024, Vander Sanden wrote a memo to Plaintiff and various prison staff regarding this issue. *Id.* at 4. The memo threatened Plaintiff with a conduct report just three days after the court's decision arrived. Vander Sanden threated to punish Plaintiff for discussing his illegal imprisonment with other staff members. *Id.* Vander Sanden knew about Plaintiff's illegal imprisonment, but she refused to listen to anything Plaintiff had to say. *Id.* Harper, Walther, and Unit W IUS threatened Plaintiff the same day when he tried to talk to them about his false imprisonment. *Id.*

On another September 2024 day, Plaintiff spoke with Cahak about his illegal imprisonment. *Id.* Plaintiff showed him all the necessary documents to establish beyond a reasonable doubt that Plaintiff was being held illegally past his release date. *Id.* Cahak lied to Plaintiff and said that staff were working on arrangements for Plaintiff's release. *Id.* Cahak was deliberately indifferent to Plaintiff being held past his release date. *Id.* Rusczinsky wrote Plaintiff a ticket for asking him about his illegal imprisonment. *Id.* at 5.

On October 3, 2024, Feltes met with Plaintiff to notarize his new petition for habeas corpus. *Id.* Feltes already did not like Plaintiff because he prevailed on an inmate complaint against her. *Id.* Feltes refused to even enter the room with Plaintiff. *Id.* Feltes immediately began shaking her head no even before Plaintiff spoke. *Id.* Plaintiff told Feltes it was a petition to prevent him from being wrongfully imprisoned, but Feltes told Plaintiff she could not notarize the petition. *Id.* Plaintiff believes Feltes left the room to speak with Toddish about the issue; Feltes returned and told Plaintiff she could not help him that day and that he could try the following week. *Id.* Following Feltes's refusal, Plaintiff sought help from Christianson and

Page 4 of 13
Case 2:24-cv-01543-JPS     Filed 04/30/25     Page 4 of 13     Document 9

Baatz to notarize his document. *Id.* They informed Plaintiff that he had been instructed not to talk about his illegal imprisonment and that he was not getting out. *Id.* 5–6. When Plaintiff realized they would not help him, he picked up his paperwork and attempted to leave. *Id.* at 6. However, Baatz picked up his taser and pointed it at Plaintiff while yelling. *Id.* Plaintiff believes his reaction was done in retaliation for Plaintiff exercising his right to speak out about his illegal imprisonment and for Feltes not notarizing his paperwork. *Id.*

In October 2024, Gillingham was deliberately indifferent to Plaintiff's illegal imprisonment because he refused to investigate Plaintiff's complaint. *Id.* The sentence credit that Plaintiff was entitled to was obvious and clear. In November 2024, a sergeant punished Plaintiff without due process by writing him a ticket for being in an unassigned area. *Id.* The sergeant offered Plaintiff three days' loss of dayroom the day before for having his tablet on the treadmill. *Id.* Plaintiff refused and told him to write a ticket instead because the sergeant would not explain why a warning was not appropriate in light of the circumstances. *Id.* This had not been a rule the last time Plaintiff was in general population and Plaintiff had only been out of the hole for five days; Plaintiff believed three days was excessive. *Id.* The sergeant wrote the ticket the next day. *Id.* Sadowski retaliated by finding Plaintiff guilty and increasing the sanction by three hundred percent. *Id.*

3.  ANALYSIS

Although an inmate cannot use a § 1983 action as a vehicle to challenge the length or validity of their sentence, *Heck v. Humphrey*, 512 U.S. 477 (1994), courts have reasoned that an individual may raise a § 1983 challenge that does not seek to undermine a valid conviction and sentence.

*See e.g. Peterson v. James*, 2021 WL 2554458 (S.D. Ill. June 22, 2021) (finding that a former inmate could pursue Eighth and Fourteenth Amendment claims where he did not contest the validity of his conviction or sentence, and instead merely claimed prison staff held him beyond his release date in contravention of his proper sentence). In the Seventh Circuit, "incarceration after the time specified in a sentence has expired violates the Eighth Amendment if it is the product of deliberate indifference." *Burke v. Johnston*, 452 F.3d 665, 669 (7th Cir. 2006); *see also Werner v. Wall*, 836 F.3d 751 (7th Cir. 2016) (collecting cases); *Armato v. Grounds*, 766 F.3d 713 (7th Cir. 2014); *Turner v. Godinez*, 693 Fed. App'x. 449, 454 (7th Cir. 2017). Further, the prolongment of a sentence raises Fourteenth Amendment due process concerns. *Werner*, 836 F.3d at 761; *Armato*, 766 F.3d at 721–22; *see also Brzowski v. Baldwin*, No. 17-c-9339, 2018 WL 4917084, at *2 (N.D. Ill. Oct. 9, 2018) ("It is difficult to imagine a more fundamental deprivation of liberty" than denying Plaintiff release after he had served his full sentence).

Here, Plaintiff is no longer in custody and he alleges that Defendants intentionally imprisoned him beyond his release date, resulting in an illegal extension of Plaintiff's confinement. These allegations are sufficient to state Eighth Amendment and Fourteenth Amendment claims against Defendants. The Court notes that it is not entirely clear exactly what each Defendant knew about Plaintiff's situation; it seems that some defendants may have known more than others. However, at the screening stage the Court construes Plaintiff's allegations liberally and will therefore allow Plaintiff to proceed against Toddish, Standke, Vander Sanden, Sadowski, Rusczinsky, Baatz, Cahak, Christianson, Gillingham, Feltes, Harper, Walthers, John Doe, and Unit W IUS for knowingly keeping him imprisoned past his release date.

Second, the Court finds that Plaintiff may proceed on a First Amendment retaliation claim against Defendants Vanden Sander, Harper, Walthers, Unit W IUS, Rusczinsky, Feltes, Christianson, and Baatz. To prevail on a retaliation claim, Plaintiff must ultimately show that: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014). The Seventh Circuit has instructed that the proper question in determining whether speech is protected is whether the prisoner "'engaged in [the] speech in a manner consistent with legitimate penological interests.'" *Whitfield v. Spiller*, 76 F.4th 698, 708 (7th Cir. 2023) (quoting *Watkins v. Kasper*, 599 F.3d 791, 796 (7th Cir. 2010)). The Seventh Circuit has found that speech is not protected where it is disruptive, confrontational, or something that violates prison disciplinary policies such as "back talk." *Id.* (quotations omitted).

Plaintiff alleges that these defendants punished him for seeking help from prison staff regarding his illegal imprisonment. It is well established that a prisoner's ability to file grievances is protected by the First Amendment. *See Hughes v. Scott*, 816 F.3d 955, 956 (7th Cir. 2016). As for the second element, Plaintiff alleges suffering deprivations—receiving conduct reports and being denied necessary notary services—that, we can infer, would likely dissuade a person of ordinary firmness from exercising further First Amendment activity. *See Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012). At the pleadings stage, the Court finds these allegations are sufficient to proceed on a First Amendment retaliation claim against Vanden Sander, Harper, Walthers, Unit W IUS, Rusczinsky, Feltes, Christianson, and Baatz.

Finally, the Court finds that Plaintiff may not proceed on a Fourteenth Amendment claim for a deprivation of liberty without due process for the November 2024 incident. A prisoner challenging the process he was afforded in a prison disciplinary proceeding must meet two requirements: (1) he has a liberty or property interest that the state has interfered with; and (2) the procedures he was afforded upon that deprivation were constitutionally deficient. *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007) (citing *Rowe v. DeBruyn*, 17 F.3d 1047, 1053 (7th Cir. 1994)).

"A prisoner's liberty interest, and incumbent entitlement to procedural due process protections, generally extends only to freedom from deprivations that 'impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prisoner life." *Lekas v. Briley*, 405 F.3d 602, 608 (7th Cir. 2005) (quoting *Sandin v. Conner*, 515 U.S. 472, 483–84 (1995)). In the absence of an "atypical and significant" deprivation, the procedural protections of the Due Process Clause are not triggered. *Id.* Disciplinary segregation can trigger due process protections. *Marion v. Columbia Correctional Inst.*, 559 F.3d 693, 697 (7th Cir. 2009) (citations omitted). When making the determination whether an inmate is entitled to such protections, courts analyze "the combined import of the duration of the segregative confinement and the conditions endured by the prisoner during that period." *Id.* If conditions in segregation are significantly harsher than those in the normal prison environment, then a liberty interest may arise even when the duration of the segregation, standing alone, would not trigger such an interest. *Id.* at 697–98. On the one hand, "six months of segregation is 'not such an extreme term' and, standing alone, would not trigger due process rights." *Id.* at 698 (quoting *Whitford v. Boglino*, 63 F.3d

527, 533 (7th Cir. 1995)). On the other end of the spectrum, transfer to a maximum-security prison and placement in segregated confinement for an indefinite duration where virtually all sensory and environmental stimuli are denied, little human contact is permitted, and prisoners otherwise eligible for parole are disqualified from parole eligibility, taken together, impose an atypical and significant hardship within the correctional context. *Id.* at 697 (citing *Wilkinson v. Austin*, 549 U.S. 209, 224 (2005)).

Once a liberty or property interest has been invoked, the Court looks to what process was due. Prison disciplinary hearings satisfy procedural due process requirements where an inmate is provided: (1) written notice of the charge against the prisoner twenty four (24) hours prior to the hearing; (2) the right to appear in person before an impartial body; (3) the right to call witnesses and to present physical/documentary evidence, but only when doing so will not unduly jeopardize the safety of the institution or correctional goals; and (4) a written statement of the reasons for the action taken against the prisoner. *See Wolff v. McDonnell*, 418 U.S. 539, 563–69 (1974); *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir. 1988). Not only must the requirements of *Wolff* be satisfied, but the decision of the disciplinary hearing board must be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994).

Here, Plaintiff's complaint does not contain sufficient facts showing that Defendants interfered with a liberty interest with respect to the November 2024 conduct report. An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face." *Twombly*, 550 U.S. at 570. Plaintiff alleges generally that he should have received a warning instead of being written up for his conduct. Plaintiff further alleges that Sadowski retaliated against him and

increased the sanction. On these facts alone, the Court cannot determine that Plaintiff suffered an atypical and significant deprivation since it is not even clear what sanction Plaintiff received. *See Marion*, 559 F.3d at 698. Accordingly, based on the allegations in Plaintiff's complaint, the Court cannot determine that Plaintiff had a protected liberty interest. As such, Plaintiff may not proceed on a due process claim.

4.  **CONCLUSION**

In light of the foregoing, the Court finds that Plaintiff may proceed on the following claims pursuant to 28 U.S.C. § 1915A(b):

**Claim One:** Eight Amendment deliberate indifference claim against Defendants Toddish, Standke, Vander Sanden, Sadowski, Rusczinsky, Baatz, Cahak, Christianson, Gillingham, Feltes, Harper, Walthers, John Doe, and Unit W IUS for knowingly keeping Plaintiff past his release date.

**Claim Two:** Fourteenth Amendment due process claim against Defendants Toddish, Standke, Vander Sanden, Sadowski, Rusczinsky, Baatz, Cahak, Christianson, Gillingham, Feltes, Harper, Walthers, John Doe, and Unit W IUS for knowingly keeping his past his release date.

**Claim Three:** First Amendment retaliation claim against Defendants Vanden Sander, Harper, Walthers, Unit W IUS, Rusczinsky, Feltes, Christianson, and Baatz.

The Court has enclosed with this Order guides prepared by court staff to address common questions that arise in cases filed by prisoners. These guides are entitled, "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions." They contain information that Plaintiff may find useful in prosecuting his case.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to proceed without prepaying the filing fee, ECF No. 4, be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that under an informal service agreement between the Wisconsin Department of Justice and this Court, a copy of the signed complaint and this Order have been electronically transmitted to the Wisconsin Department of Justice for service on Defendants Toddish, Standke, Vander Sanden, Sadowski, Rusczinsky, Baatz, Cahak, Christianson, Gillingham, Feltes, Harper, Walthers, and Unit W IUS;

**IT IS FURTHER ORDERED** that under the informal service agreement, those Defendants shall file a responsive pleading to the signed complaint within sixty (60) days;

**IT IS FURTHER ORDERED** that Defendants raise any exhaustion-related challenges by filing a motion for summary judgment within forty-five (45) days of service;

**IT IS FURTHER ORDERED** if Defendants contemplate a motion to dismiss, the parties must meet and confer before the motion is filed. Defendants should take care to explain the reasons why they intend to move to dismiss the. signed complaint, and Plaintiff should strongly consider filing an amended complaint. The Court expects this exercise in efficiency will obviate the need to file most motions to dismiss. Indeed, when the Court grants a motion to dismiss, it typically grants leave to amend unless it is "certain from the face of the complaint that any amendment would be futile or otherwise unwarranted." *Harris v. Meisner*, No. 20-2650, 2021 WL 5563942, at *2 (7th Cir. Nov. 29, 2021) (quoting

*Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 524 (7th Cir. 2015)). Therefore, it is in both parties' interest to discuss the matter prior to motion submissions. Briefs in support of, or opposition to, motions to dismiss should cite no more than ten (10) cases per claim. No string citations will be accepted. If Defendants file a motion to dismiss, Plaintiff is hereby warned that he must file a response, in accordance with Civil Local Rule 7 (E.D. Wis.), or he may be deemed to have waived any argument against dismissal and face dismissal of this matter with prejudice; and

**IT IS FURTHER ORDERED** that the Clerk's Office mail Plaintiff a copy of the guides entitled "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions," along with this Order.

Dated at Milwaukee, Wisconsin, this 30th day of April, 2025.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

Plaintiffs who are inmates at Prisoner E-Filing Program institutions shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. Prisoner E-Filing is mandatory for all inmates at Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility.

Plaintiffs who are inmates at all other prison facilities, or who have been released from custody, will be required to submit all correspondence and legal material to:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

**DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.

Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.