# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

TRAVIS HOLLSTEN,

                Plaintiff,

v.

AMY TODDISH, JESSICA STANDKE,
JAMIE VANDER SANDEN, KURT
SADOWSKA, GRANT RUCINSKI,
NICHOLAS BAATZ, BRIAN CAHAK,
JOHNATHAN CHRISTIANSON,
TODD GILLINGHAM, SARAH
FELTES, MARK HARPER, ASHLEY
WALTHER, JOHN DOE, and RYAN
KUEPPER,

                Defendants.

Case No. 24-CV-1543-JPS

**ORDER**

---

Plaintiff Travis Hollsten ("Plaintiff"), a former inmate, filed a pro se complaint under 42 U.S.C. § 1983 alleging that Defendants Amy Toddish ("Toddish"), Jessica Standke ("Standke"), Jamie Vander Sanden ("Vander Sanden"), Kurt Sadowska ("Sadowska"), Grant Rucinski ("Rucinski"), Nicholas Baatz ("Baatz"), Brian Cahak ("Cahak"), Johnathan Christianson ("Christianson"), Todd Gillingham ("Gillingham"), Sarah Feltes ("Feltes"), Mark Harper ("Harper"), Ashley Walther ("Walther"), John Doe, and Ryan Kuepper ("Kuepper")[1] violated his constitutional rights. ECF No. 1. On April 30, 2025, the Court screened Plaintiff's amended complaint and allowed Plaintiff to proceed on the following three claims: (1) Eighth

---

[1] Plaintiff initially identified Kuepper as "The Unit W IUS"; counsel for the Defendants identified Kuepper when accepting service on his behalf. ECF No. 14.

Amendment deliberate indifference claim against Defendants Toddish, Standke, Vander Sanden, Sadowska, Rucinski, Baatz, Cahak, Christianson, Gillingham, Feltes, Harper, Walther, John Doe, and Kuepper for knowingly keeping Plaintiff past his release date; (2) Fourteenth Amendment due process claim against Defendants Toddish, Standke, Vander Sanden, Sadowska, Rucinski, Baatz, Cahak, Christianson, Gillingham, Feltes, Harper, Walther, John Doe, and Kuepper for knowingly keeping his past his release date; and (3) First Amendment retaliation claim against Defendants Vanden Sander, Harper, Walther, Kuepper, Rucinski, Feltes, Christianson, and Baatz. ECF No. 9 at 10. Prior to Defendants' appearance, Plaintiff filed a motion for summary judgment because no facts were in dispute. ECF No. 10. The Court will deny this motion because it was premature.

On July 7, 2025, Defendants filed a motion for summary judgment, arguing that Plaintiff failed to exhaust his administrative remedies as to all the claims in this case. ECF No. 28.[2] The Court will grant Defendants' motion for an extension of time to file summary judgment based on exhaustion and therefore finds the motion timely. On July 14, 2025, Plaintiff filed a brief in opposition, ECF No. 32, and a motion to amend the complaint, ECF No. 33. On July 28, 2025, Defendants filed a reply that also addresses Plaintiff's motion to amend the complaint. ECF No. 36. The

---

[2] Defendant Toddish and John Doe did not file for summary judgment in this case. *See* ECF No. 28. However, Defendants indicate that if the motion for summary judgment is successful, the Court should dismiss the claims against these defendants based on Plaintiff's failure to exhaust administrative remedies. ECF No. 29 at 1 n.1. The Court agrees because Plaintiff was provided notice and reasonable time to respond to any argument that he exhausted his administrative remedies with respect to these defendants. *See* Fed. R. Civ. P. 56(f)(1).

motion for summary judgment is now fully briefed and ready for disposition. For the reasons explained below, the Court will grant Defendants' motion for summary judgment based on the failure to exhaust administrative remedies and this case will be dismissed without prejudice.

As a preliminary matter, however, the Court will deny Plaintiff's motion to amend the complaint because amendment would be futile. Federal Rule of Civil Procedure 15 provides that the Court freely grant leave to amend when justice so requires. Here, Plaintiff seeks to add a claim against Judge Zakowski for wrongly delaying his release from custody. However, amendment would but futile in this instance because, as discussed below, Plaintiff failed to properly exhaust his administrative remedies for the claims in this case. Moreover, Plaintiff's claims against Judge Zakowski appear to likely be barred by judicial immunity. *See John v. Barron*, 897 F.2d 1387, 1391 (7th Cir. 1990) (Judges not liable in civil actions for their judicial acts unless they have acted in the clear absence of all jurisdiction.). As such, the Court will deny Plaintiff's motion to amend the complaint.

1.      STANDARD OF REVIEW

    1.1     Summary Judgment

Federal Rule of Civil Procedure 56 provides that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The

Court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016).

### 1.2 Exhaustion of Prisoner Administrative Remedies

The Prison Litigation Reform Act ("PLRA") establishes that, prior to filing a lawsuit complaining about prison conditions, a prisoner must exhaust "such administrative remedies as are available." 42 U.S.C. § 1997e(a). To do so, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). He must do so precisely in accordance with those rules; substantial compliance does not satisfy the PLRA. *Id.*; *Burrell v. Powers*, 431 F.3d 282, 284–85 (7th Cir. 2005). A suit must be dismissed if it was filed before exhaustion was complete, even if exhaustion is achieved before judgment is entered. *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). The exhaustion requirement furthers several purposes, including restricting frivolous claims, giving prison officials the opportunity to address situations internally, giving the parties the opportunity to develop the factual record, and reducing the scope of litigation. *Smith v. Zachary*, 255 F.3d 446, 450–51 (7th Cir. 2001). Failure to exhaust administrative remedies is an affirmative defense to be proven by a defendant. *Westefer v. Snyder*, 422 F.3d 570, 577 (7th Cir. 2005).

### 1.2.1 Inmate Complaint Review System

The Wisconsin Department of Corrections (the "DOC") maintains an inmate complaint review system ("ICRS") to provide a forum for administrative complaints. Wis. Admin. Code § DOC 310.04. The ICRS "allow[s] inmates to raise in an orderly fashion issues regarding department policies, rules, living conditions, and employee actions that

personally affect the inmate or institution environment, including civil rights claims." *Id.* § DOC 310.01(2)(a). Before commencing a civil action or special proceedings, "inmate[s] shall exhaust all administrative remedies the [DOC] has promulgated by rule." *Id*. § DOC 310.05.

There are two steps an inmate must take to exhaust the available administrative remedies. First, the inmate must file an offender complaint with the Institution Complaint Examiner ("ICE") within fourteen days of the events giving rise to the complaint. *Id.* § DOC 310.07(2). The ICE may reject the complaint or return the complaint to the inmate and allow him or her to correct any issue(s) and re-file within ten days. *See id.* § DOC 310.10(5),(6). If the complaint is rejected, the inmate may appeal the rejection to the appropriate reviewing authority within ten days. *Id.* § DOC 310.10(10).[3] If the complaint is not rejected, the ICE issues a recommendation of either dismissal or affirmance to the reviewing authority. *Id.* § DOC 310.10(9),(12). The reviewing authority ("RA") will affirm or dismiss the complaint, in whole or in part, or return the complaint to the ICE for further investigation. *Id.* § DOC 310.11(2).

Second, if the ICE recommends, and the RA accepts, dismissal of the complaint, the inmate may appeal the decision to the Corrections Complaint Examiner ("CCE") within fourteen days. *Id*. §§ DOC 310.09(1), 310.12. The CCE issues a recommendation to the Secretary of the Department of Corrections, who may accept or reject it. *Id*. §§ DOC 310.12(2), 310.13. The inmate exhausts this administrative process when he or she receives the Secretary's decision. *Id.* § DOC 310.13(2),(3). If the inmate

---

[3]The ICRS defines a "reviewing authority" as "a person who is authorized to review and decide an inmate complaint." Wis. Admin. Code § DOC 310.03(15).

does not receive the Secretary's written decision within ninety days of the date of receipt of the appeal in the CCE's office, the inmate shall consider the administrative remedies to be exhausted. *Id.* § DOC 310.13(4).

## 2. RELEVANT FACTS

Defendants' motion for summary judgment addresses the issue only of whether Plaintiff exhausted his administrative remedies as to the three claims in this case. The Court accordingly finds the following facts relevant to the disposition of the issue at hand.

### 2.1 Plaintiff's Allegations

On September 3, 2024, Oshkosh Correctional Records Supervisors Standke and Vander Sanden and Records Officer Toddish were deliberately indifferent to Plaintiff's illegal imprisonment. ECF No. 8 at 1. These individuals refused to release Plaintiff from prison despite Judge Zakowksi's decision granting Plaintiff habeas corpus. Plaintiff's sentence had expired in 2022, many months prior to Plaintiff's revocation in 2023. *Id.* These individuals manufactured an obviously obtuse justification to keep Plaintiff imprisoned past his release date.

Instead of releasing Plaintiff, Standke wrote a confusing and obtuse letter to the judge explaining that Plaintiff's sentence was not complete. *Id.* at 2. Standke wanted to be the mastermind who did everything in her power to keep Plaintiff imprisoned past his release date even though she knew his sentence was complete. *Id.* The judge did not respond to Standke for seventeen days because he had a grudge against Plaintiff and did not care about him. *Id.* Toddish and Sadowska attended a meeting with Plaintiff regarding his request for release. *Id.* Both individuals knew that Plaintiff was being held past his release date; Plaintiff had documents that conclusively established that his sentence expired in 2023. Toddish and

Sadowska both could have done something to help Plaintiff, but they deliberately chose not to help him. *Id.*

On September 9, 2024, Vander Sanden wrote a memo to Plaintiff and various prison staff regarding this issue. *Id.* at 4. The memo threatened Plaintiff with a conduct report just three days after the court's decision arrived. Vander Sanden threated to punish Plaintiff for discussing his illegal imprisonment with other staff members. *Id.* Vander Sanden knew about Plaintiff's illegal imprisonment, but she refused to listen to anything Plaintiff had to say. *Id.* Harper, Walther, and Unit W IUS threatened Plaintiff the same day when he tried to talk to them about his false imprisonment. *Id.*

On another September 2024 day, Plaintiff spoke with Cahak about his illegal imprisonment. *Id.* Plaintiff showed him all the necessary documents to establish beyond a reasonable doubt that Plaintiff was being held illegally past his release date. *Id.* Cahak lied to Plaintiff and said that staff were working on arrangements for Plaintiff's release. *Id.* Cahak was deliberately indifferent to Plaintiff being held past his release date. *Id.* Rucinski wrote Plaintiff a ticket for asking him about his illegal imprisonment. *Id.* at 5.

On October 3, 2024, Feltes met with Plaintiff to notarize his new petition for habeas corpus. *Id.* Feltes already did not like Plaintiff because he prevailed on an inmate complaint against her. *Id.* Feltes refused to even enter the room with Plaintiff. *Id.* Feltes immediately began shaking her head no even before Plaintiff spoke. *Id.* Plaintiff told Feltes it was a petition to prevent him from being wrongfully imprisoned, but Feltes told Plaintiff she could not notarize the petition. *Id.* Plaintiff believes Feltes left the room to speak with Toddish about the issue; Feltes returned and told Plaintiff she

could not help him that day and that he could try the following week. *Id.* Following Feltes's refusal, Plaintiff sought help from Christianson and Baatz to notarize his document. *Id.* They informed Plaintiff that he had been instructed not to talk about his illegal imprisonment and that he was not getting out. *Id.* 5–6. When Plaintiff realized they would not help him, he picked up his paperwork and attempted to leave. *Id.* at 6. However, Baatz picked up his taser and pointed it at Plaintiff while yelling. *Id.* Plaintiff believes his reaction was done in retaliation for Plaintiff exercising his right to speak out about his illegal imprisonment and for Feltes not notarizing his paperwork. *Id.*

In October 2024, Gillingham was deliberately indifferent to Plaintiff's illegal imprisonment because he refused to investigate Plaintiff's complaint. *Id.* The sentence credit that Plaintiff was entitled to was obvious and clear. In November 2024, a sergeant punished Plaintiff without due process by writing him a ticket for being in an unassigned area. *Id.* The sergeant offered Plaintiff three days' loss of dayroom the day before for having his tablet on the treadmill. *Id.* Plaintiff refused and told him to write a ticket instead because the sergeant would not explain why a warning was not appropriate in light of the circumstances. *Id.* This had not been a rule the last time Plaintiff was in general population and Plaintiff had only been out of the hole for five days; Plaintiff believed three days was excessive. *Id.* The sergeant wrote the ticket the next day. *Id.* Sadowska retaliated by finding Plaintiff guilty and increasing the sanction by three hundred percent. *Id.*

### 2.2. Exhaustion Facts

Plaintiff provided no response to Defendants' proposed facts. As such, the Court adopts Defendants' proposed findings of fact ("DPFF"),

ECF No. 18, as undisputed for the purposes of this motion. *See* Fed. R. Civ. P. 56(e)(2). Thus, the following facts are taken directly from DPFF with only minor edits for grammar and formatting.

Plaintiff was an inmate in the custody of the Wisconsin Department of Corrections ("DOC") and housed at Oshkosh Correctional Institution ("OCI") between May 17, 2023 and December 9, 2024. Non-Defendant Emily Davidson is employed by the DOC as a CCE at DOC's Central Office in Madison, Wisconsin. She has held this position since January 24, 2016. In her capacity as a CCE, Davidson is primarily responsible for performing investigations of offender complaints appealed to the Secretary and recommending decisions and disposition narratives for approval by the Secretary. Wisconsin has established the ICRS, which gives inmates a mechanism to file complaints related to significant issues regarding rules, living conditions, and staff actions affecting the institution environment as the principal administrative remedy for those in DOC custody.

CCE Davidson has access to the Inmate Complaint Tracking System ("ICTS"), which is a database that stores all documents and reports submitted and generated through the ICRS. CCE Davidson has diligently searched and examined the ICTS for records related to inmate complaints and appeals filed by Plaintiff related to the claims in this case. Plaintiff's Inmate Complaint History Report lists all of his complaints processed through the ICRS as of May 30, 2025. From Plaintiff's ICRS, CCE Davidson identified ten inmate complaints potentially related to the claims that the Court allowed him to proceed on: OSCI-2024-9253; OSCI-2024-13127; OSCI-2024-13311; OSCI-2024-14264; OSCI-2024-14693; OSCI-2024-14863; OSCI-2024-15109; OSCI-2024-15433; OSCI-2024-16137; and OSCI-2024-16431.

CCE Davidson found no other inmate complaints regarding the claims in this lawsuit.

**OSCI-2024-9253**

On June 19, 2024, the ICE office received and acknowledged inmate complaint OSCI-2024-9253. In inmate complaint OSCI-2024-9253, Plaintiff identified the incident date as June 18, 2024, and the issue as: "Sentence credit." Plaintiff provided the following details:

> . . . I was promised to be 'entitled' to sentence credit up until my revocation. The Court confirms this . . . and instructs me the DOC will assure I receive this sentence credit that I'm entitled to . . . That sentence credit amounts to 9 months which would amount in my illegal imprisonment right now . . . .

On July 23, 2024, the reviewing ICE, Defendant Gillingham, rejected inmate complaint OSCI-2024-9253 and stated:

> Mr. Hollsten files this complaint regarding his sentence credit and the ICE finds his claim of 06/18/24 being the date of incident to not be accurate. Not receiving the sentence credit that he believes he is entitled to is the incident giving rise to this complaint, and the date of occurrence is determined to be on or around 06/07/23, the date he would have received a copy of his sentence computation. Considering Mr. Hollsten became aware of this incident on or around 06/07/23, it is beyond the 14-day time limit to file a complaint. Mr. Hollsten submitted this complaint approximately one (1) year after 06/07/23; which is well past the 14-day time limit . . . Furthermore, considering the fact that Mr. Hollsten has used the [ICRS] twenty-nine (29) times previously, since 03/25/14, the ICE contends that he understands the rules associated with the ICRS, which are found within Wisconsin Administrative Code DOC 310 . . . .

Plaintiff did not appeal the ICE's rejection of inmate complaint OSCI-2024-9253.

**OSCI-2024-13127**

On September 4, 2024, the ICE's office received and acknowledged inmate complaint OSCI-2024-13127. In inmate complaint OSCI-2024-13127, Plaintiff identified the incident date as September 3, 2024, and the issue as: "Standke, the Captain who was with us, a new email to the judge Illegal Imprisonment." Plaintiff provided the following details:

> This morning I met with Standke from records and a Captain to go over the fact that I am being held past my release date per my 8/27/24 Amended Judgment . . . Even though I showed clearly and without question using DOC data computation sheets that . . . I'm owed 329 days credit . . . the Captain and Standke refused my suggestion that we allude to the sentence credit in the mail Standke sends to the Judge to prevent or at least try to precent more of my unlawful imprisonment which she referred to as his intent and understanding in her own email to him. Thus demonstrating deliberate indifference to the risk and likelihood of the continuation of my illegal imprisonment.

On July 23, 2024, the reviewing ICE, Defendant Gillingham, recommended that inmate complaint OSCI-2024-13127 be dismissed and stated:

> Ms. Standke, Records Supervisor, sent Judge Zakowski a letter concerning the amended decision for Brown County Case 17CF1601 and explaining that upon review of the sentence structure to determine the impact of the JOC, they found that the modified sentence would not impact the release date as intended by the Court according to the decision . . . Judge Zakowski responded to the letter, that was received by the court on 09/03/24, concerning Mr. Hollsten's sentence and sentence credit . . . Judge Zakowski amended the JOC from 38 days of sentence credit to 56 days of sentence credit. [ ] On 09/25/24 Judge Zakowski sent another letter to Ms. Standke . . . he wrote that her letter was very helpful in explaining why Mr. Hollsten's discharge date remains

February 20, 2025 even with the amended judgment. Judge Zakowski noted that there was also the issue of the sentence credit, as it originally listed 38 days and Mr. Hollsten argued he is entitled to 329 days credit. He wrote that a review led the court to order 56 days of credit . . . Based off the information in the letters from Judge Zakowski, Mr. Hollsten's discharge date remains 02/20/25 even with the amended judgment, thus, he is not being illegally imprisoned. If Mr. Hollsten has an issue with his sentence credit, he can address that issue with the court . . . .

On October 11, 2024, the RA upheld the ICE's recommendation and dismissed inmate complaint OSCI-2024-13127. Plaintiff appealed the RA's dismissal. The appeal was received by the CCE's office on October 25, 2024. On November 6, 2024, CCE Davidson recommended that Plaintiff's appeal be rejected, as his appeal did not comply with the requirement under Wis. Admin. Code § DOC 310.09(2)(e): "Not exceed 500 words total and not exceed two pages." On November 26, 2024, the Secretary accepted the CCE's recommendation and dismissed Plaintiff's appeal. Plaintiff did not resubmit his appeal to inmate complaint OSCI-2024-13127.

**OSCI-2024-13311**

On September 9, 2024, the ICE's office received and acknowledged inmate complaint OSCI-2024-13311. In inmate complaint OSCI-2024-13311, Plaintiff identified the incident date as September 8, 2024, and the issue as: "False imprisonment [ ] Release." Plaintiff provided the following details:

On 8/24/24 Judge Zakowski granted my petition for habeas corpus . . . On 9/3/24 I met with records (Standke(?)) and a white shirt and they both ignored the evidence I presented . . . which proved I was now being held beyond my release date and sent an [sic] letter arguing against the fact of the completion of my sentence to the Judge omitting the prior consecutively imposed initial confinements amounting to 329 days credit . . . thereby prolonging my false imprisonment[.]

On October 7, 2024, the reviewing ICE, Defendant Gillingham, recommended that inmate complaint OSCI-2024-13311 be rejected and stated:

> Mr. Hollsten has filed this complaint before receiving a decision for complaint OSCI-2024-13127, which addresses this very same issue within this complaint; being held past his release date. Complaint OSCI-2024-13127 is not exhausted through the [ICRS] . . . The issue raised in this complaint has been addressed through Mr. Hollsten's prior use of the ICRS . . . Rejection of this complaint is warranted as there is no new issue presented . . . .

Plaintiff appealed the ICE's rejection. The appeal was received by the RA on October 29, 2024. On November 12, 2024, Defendant Warden Cahak rejected Plaintiff's appeal of inmate complaint OSCI-2024-13311, as it was filed beyond the 10-calendar-day limit and, therefore, untimely.

**OSCI-2024-14264**

On September 26, 2024, the ICE's office received and acknowledged inmate complaint OSCI-2024-14264. In inmate complaint OSCI-2024-14264, Plaintiff identified the incident date as September 18, 2024, and the issue as: "Todd Gillingham I want to audit the ICRS." Plaintiff provided the following details:

> My 9/18/24 submitted complaint was returned because staff are either retaliating or just aren't that smart. Todd rejected my complaint incorrectly, saying that it PERTAINED to a conduct report that was written, when in fact it simply REFERENCED a conduct report that was written. What my ticket PERTAINED to was retaliation just like the issue stated.

Inmate complaint OSCI-2024-14264 pertains to an ICE return letter that Plaintiff received on or about September 18, 2024, where his inmate complaint submission was not accepted. There, Plaintiff was given one

opportunity to correct and resubmit his returned complaint. On October 7, 2024, the reviewing ICE recommended that inmate complaint OSCI-2024-14264 be dismissed and stated: "Inmate Hollsten had ten (10) days to fix the complaint and to resubmit the complaint to the ICE Office. Inmate Hollsten has not returned the complaint to the ICE Office . . . ." On October 28, 2024, Defendant Warden Cahak upheld the ICE's recommendation and dismissed inmate complaint OSCI-2024-14264.

**OSCI-2024-14693**

On October 4, 2024, the ICE's office received and acknowledged inmate complaint OSCI-2024-14693. In inmate complaint OSCI-2024-14693, Plaintiff identified the incident date as October 3, 2024, and the issue as: "Sara Feltes refusing to notarize my petition for writ of habeas corpus. I want $10k for every day it takes to get notary." Plaintiff provided the following details:

> Sara Feltes refused to notarize my petition for writ of habeas corpus. This petition requires notarization. Her action prolongs my illegal imprisonment. Sara Feltes and both white shirts refused to tell me the policy that prohibited my petition from being notarized, Sara told me I could try again next week.

On November 1, 2024, the reviewing ICE recommended that inmate complaint OSCI-2024-14693 be dismissed and stated:

> The ICE contacted Sarah Feltes who is a notary for OSCI. Ms. Feltes said she completed an incident report as inmate Hollsten became defensive when he was informed that documents could not be notarized based on policy . . . Ms. Feltes says that she was not able to notarize the documents based on policy which was printed and provided to inmate Hollsten. Security Supervisors responded to the "barn" room. Security staff displaced [sic] a taser as a sign of use of force however was not deployed. Inmate Hollsten was placed in

Temporary Lock Up (TLU) status as a result of this interaction
. . . .

On November 13, 2024, the RA upheld the ICE's recommendation and dismissed inmate complaint OSCI-2024-14693. Plaintiff appealed the RA's dismissal. The appeal was received by the CCE's office on November 18, 2024. Plaintiff wrote in his appeal:

> Sarah Feltes refused to notarize my petition for writ of habeas corpus and wouldn't give me a reason why. I still have the petition, it is typed. I always type my court documents, I have a U.S.B., I've had extra law library approval almost every month since Mid-2023, and I always use library time to type. Sarah lied about my petition being handwritten and she lied about me saying she should have called me down during library. That would be the opposite of what I'd want.

On December 16, 2024, CCE Davidson recommended that Plaintiff's appeal be dismissed and stated:

> . . . the complainant's actions that led up to the notary request were disruptive and prevented actual request from being fulfilled . . . The complainant did not even provide what the document was he was requesting to have notarized, the complainant entered her office, escalated, with aggressive speech, and requested a "white shirt" (supervising officer) . . . The document was never presented for notary to be denied.

On December 20, 2024, the Secretary accepted the CCE's recommendation and dismissed Plaintiff's appeal.

### OSCI-2024-14863

On October 8, 2024, the ICE's office received and acknowledged inmate complaint OSCI-2024-14863. In inmate complaint OSCI-2024-14863, Plaintiff identified the incident date as October 4, 2024, and the issue as: "Illegal imprisonment; I want $10k every day since 8/24/24." Plaintiff provided the following details:

…So what jurisdiction does the DOC have after I am GRANTED my petition for habeas corpus, wherein I prayed for discharged from illegal imprisonment because my sentence expired in 2022, to take that award from me and continue punishing me with illegal imprisonment?

On October 15, 2024, the reviewing ICE recommended that inmate complaint OSCI-2024-14863 be rejected and stated:

Inmate Hollsten is making it clear that he is not satisfied with the decision he received regarding complaint #OSCI-2024-13127, as that complaint addressed this very same issue; false imprisonment. Complaint #OSCI-2024-13127 is not exhausted through the [ICRS] . . . The issue raised in this complaint has been addressed through inmate Hollsten's prior use of the ICRS . . . Rejection of this complaint is warranted as there is no new issue presented….

Plaintiff filed inmate complaint OSCI-2024-14863 before he filed an appeal on the RA's dismissal of inmate complaint OSCI-2024-13127. Plaintiff appealed the ICE's rejection on inmate complaint OSCI-2024-14863. The appeal was received by the RA on October 29, 2024. On November 12, 2024, Defendant Warden Cahak rejected Plaintiff's appeal of inmate complaint OSCI-2024-14863, as it was filed beyond the 10-calendar-day limit and, therefore, untimely.

**OSCI-2024-15109**

On October 14, 2024, the ICE's office received and acknowledged inmate complaint OSCI-2024-15109. In inmate complaint OSCI-2024-15109, Plaintiff identified the incident date as October 4, 2024, and the issue as: "I want the sentence credit and to be released no later than today." Plaintiff provided the following details:

Vander Sanden and Toddish both know for an absolute fact that I am entitled to sentence credit which would expire my sentence in 2022 (making the last 18 months I've been locked

up illegal) and refuse to honor it and release me, and they know the "judge" gave me an incorrect amount.

On October 15, 2024, the reviewing ICE recommended that inmate complaint OSCI-2024-15109 be rejected and stated:

> Inmate Hollsten is making it clear that he is not satisfied with the decision he received regarding complaint #OSCI-2024-13127, as that complaint addressed his very same issue; sentence credit. Complaint #OSCI-2024-13127 is not exhausted through the [ICRS] . . . The issue raised in this complaint has been addressed through inmate Hollsten's prior use of the ICRS . . . Rejection of this complaint is warranted as there is no new issue presented….

Plaintiff filed inmate complaint OSCI-2024-15109 before he filed an appeal on the RA's dismissal of inmate complaint OSCI-2024-13127. Plaintiff appealed the ICE's rejection on inmate complaint OSCI-2024-13127. The appeal was received by the RA on October 29, 2024. On November 12, 2024, Defendant Warden Cahak rejected Plaintiff's appeal of inmate complaint OSCI-2024-15109, as it was filed beyond the 10-calendar-day limit and, therefore, untimely.

**OSCI-2024-15433**

On October 14, 2024, the ICE's office received and acknowledged inmate complaint OSCI-2024-15433. In inmate complaint OSCI-2024-15433, Plaintiff identified the incident date as October 18, 2024, and the issue as: "Illegal imprisonment; I want $20,000 for every day. I've been and continue to be illegally imprisoned." Plaintiff provided the following details:

> . . . I am being illegally imprisoned and any arguments for or against sentence credit are moot and in any case the DOC knows I am entitled to sentence credit from 1/29/18–8/6/18 and 11/13/18–5/11/21 which would make my revocation and imprisonment in 2023 and 2024 illegal because my sentence expired in 2022.

On November 18, 2024, the reviewing ICE recommended that inmate complaint OSCI-2024-15433 be rejected and stated:

> Inmate Hollsten is making it clear that he is not satisfied with the decision he received regarding complaint #OSCI-2024-13127, as that complaint addressed this very same issue; false imprisonment. Complaint #OSCI-2024-13127 is not exhausted through the [ICRS] . . . The issue raised in this complaint has been addressed through inmate Hollsten's prior use of the ICRS . . . Rejection of this complaint is warranted as there is no new issue presented….

Plaintiff filed inmate complaint OSCI-2024-15433 before he filed an appeal on the RA's dismissal of inmate complaint OSCI-2024-13127. Plaintiff did not appeal the ICE's rejection of inmate complaint OSCI-2024-15433.

**OSCI-2024-16137**

On November 4, 2024, the ICE's office received and acknowledged inmate complaint OSCI-2024-16137. In inmate complaint OSCI-2024-16137, Plaintiff identified the incident date as October 27, 2024, and the issue as: "My sentence expired. I would like proof that I'm wrong, which is impossible because I'm not. So I'd just like to go home now." Plaintiff provided the following details:

> Vander Sanden, Toddish, Standke, etc et al They told me via a 9/9/24 memo (included) that they won[']t be responding to anything regarding this matter .. . I was arrested and placed into custody on 1/29/18 for two felony warrants . . By law I am entitled to sentence credit . . . 189 days credit which would put me 18 months past my release date.

On November 19, 2024, the reviewing ICE recommended that inmate complaint OSCI-2024-16137 be rejected and stated:

> Inmate Hollsten is making it clear that he is not satisfied with the decision he received regarding complaint #OSCI-2024-13127, as that complaint addressed this very same issue;

sentence credit and release date. [ ] Complaint #OSCI-2024-13127 is exhausted through the [ICRS] . . . The issue raised in this complaint has been addressed through inmate Hollsten's prior use of the ICRS. . . Rejection of this complaint is warranted as there is no new issue presented….

Plaintiff filed inmate complaint OSCI-2024-16137 before he received the Secretary's reviewing decision on inmate complaint OSCI-2024-13127. Plaintiff did not appeal the ICE's rejection of inmate complaint OSCI-2024-16137.

### OSCI-2024-16431

On November 11, 2024, the ICE's office received and acknowledged inmate complaint OSCI-2024-16431. In inmate complaint OSCI-2024-16431, Plaintiff identified the incident date as November 9, 2024, and the issue as: "New release date, calculate it." Plaintiff provided the following details:

After numerous interview requests and emails to the Records Department to calculate my new (illegal) release date based on the Judge[']s 9/20/24 award of additional sentence credit . . . I still haven't received any kind of response. I suspect this is retaliation for threatening to sue they [sic] after refusing to release me after the Judge officially expired my sentence on 8/24/24 in his Decision. I also predict it is their intention to miscalculate my release date to make sure I don't get out when I should on 12/24/24 because nothing makes them happier than punishing someone with illegal imprisonment that they themselves cause….

On November 19, 2024, the reviewing ICE recommended that inmate complaint OSCI-2024-16431 be rejected and stated:

Inmate Hollsten is making it clear that he is not satisfied with the decision he received regarding complaint #OSCI-2024-13127, as that complaint addressed this very same issue; release date. [ ] Complaint #OSCI-2024-13127 is exhausted through the [ICRS] . . . The issue raised in this complaint has been addressed through inmate Hollsten's prior use of the

ICRS . . . Rejection of this complaint is warranted as there is no new issue presented….

Plaintiff filed inmate complaint OSCI-2024-16431 before he received the Secretary's reviewing decision on inmate complaint OSCI-2024-13127. Plaintiff did not appeal the ICE's rejection of inmate complaint OSCI-2024-16137.

### 3. ANALYSIS

Defendants request summary judgment because Plaintiff failed to exhaust his administrative remedies for all claims in this case. ECF No. 29 at 19. Defendants acknowledge that Plaintiff filed ten inmate complaints that could be related to the claims in this lawsuit. *Id.* Defendants first argue that seven of the ten inmate complaints need not be analyzed in detail because either Plaintiff did file an appeal of those complaints or because he failed to do so timely. *Id.* at 19–20. Defendants identify the following seven complaints: OSCI-2024-9253 (failed to appeal); OSCI-2024-13311 (appealed untimely); OSCI-2024-14863 (appealed untimely); OSCI-2024-15109 (appealed untimely); OSCI-2024-15433 (failed to appeal); OSCI-2024-16137 (failed to appeal); and OSCI-2024-16431 (failed to appeal). *Id.* Defendants next address in detail why three additional complaints, OSCI-2024-13127, OSCI-2024-14264, and OSCI-2024-14693, did not exhaust the claims at issue in this case.

Plaintiff failed to respond to Defendants' proposed findings of fact and has offered no specific reasoning as to why he exhausted his claims. Plaintiff generally asserts that disputed facts preclude summary judgment. These assertions are insufficient, however, at the summary judgment stage. The nonmoving party in a summary judgment motion must "respond to the moving party's properly supported motion by identifying specific,

admissible evidence showing that there is a genuine dispute of material fact for trial" rather than simply resting on the pleadings. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citing *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008)). More colloquially, the non-moving party must "put up or shut up." *Id.* Plaintiff also incorrectly believes that Defendants were required to meet and confer regarding summary judgment based on the exhaustion of administrative remedies. *See* ECF No. 9 at 11 (discussing meet and confer obligations for *motions to dismiss*). The Court therefore considers the record before it and each of Plaintiff's ten potentially related inmate complaints to determine whether Plaintiff exhausted his administrative remedies for the claims in this case.

### 3.1    OSCI-2024-9253

First, the Court finds that OSCI-2024-9253 did not exhaust any claims in this case. Plaintiff filed this inmate complaint on June 18, 2024. ECF No. 31-2 at 9. The claims in this case, however, are about incidents that happened on or after September 3, 2024. *See* ECF No. 8 at 1("On September 2024, [Defendants] were deliberately indifferent to my illegal imprisonment by refusing to release me from prison…"). One purpose of the exhaustion requirement is to permit prison officials the opportunity to address inmate concerns internally before an inmate initiates litigation. *Woodford v. Ngo,* 548 U.S. 81, 89 (2006); *Schillinger v. Kiley,* 954 F.3d 990, 995 (7th Cir. 2020). Exhaustion "promotes efficiency because a claim can generally be resolved much more quickly in an administrative proceeding than in litigation in federal court." *Schillinger*, 954 F.3d at 995. Here, Plaintiff's June 2024 inmate complaint could not possibly have given prison staff notice about Defendants' wrongdoing that allegedly occurred months later in September

2024. As such, the Court finds OSCI-2024-9253 did not exhaust any claims in this case.

### 3.2 OSCI-2024-13127

Next, the Court finds that OSCI-2024-13127 was not properly exhausted. As identified above, appealing a dismissed complaint to the CCE is a necessary step to complete exhaustion. Wisconsin regulations provide that an appeal shall not exceed 500 words total and not exceed two pages. Wis. Admin. Code § DOC 310.09(2)(e). The regulations further provide that the CCE may recommend rejection of an appeal not filed in accordance with Wis. Admin. Code § DOC 310.09. Wis. Admin. Code § DOC 310.12(5). An inmate complaint that is "rejected" based on a procedural defect, such as untimely filing, does not normally fulfill the exhaustion requirement. *Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005); *see also Webb v. Bender*, 717 Fed. Appx 642, 644 (7th Cir. 2018). This is true because "the benefits of exhaustion" can be realized only if the prison grievance system is given a fair opportunity to consider the grievance on the merits. *Woodford*, 548 U.S. at 81. If noncompliance with the procedural rules "carries no significant sanction," a prisoner who does not want to participate in the prison grievance system "will have little incentive to comply with the system's procedural rules." *Id.*

Here, the undisputed facts show that Plaintiff failed to exhaust his administrative remedies for this inmate complaint because he did not strictly comply with the appeal procedural requirements. It is undisputed that Plaintiff filed a grievance, OSCI-2024-13127, in relation to some of the claims at issue in in this case. However, the failure to properly complete each step in the appeal process constitutes the failure to exhaust administrative remedies. *See Pozo*, 286 F.3d at 1025. Plaintiff's appeal was

clearly rejected for procedural issues and not addressed on the merits at the appellate level because the appeal did not comply with the requirement to not exceed 500 words and not to exceed two pages. *See* ECF No. 31-3 at 7.

Nothing in the regulations provides that rejected appeals are returned to inmates for a second try if they fail to comply with the basic requirements. This appears reasonable in light of the large number of appeals likely processed. Plaintiff failed to comply with the simple page-limit requirement for his appeal. The undisputed facts show that Plaintiff's inmate complaint appeal was therefore rejected for procedural reasons and was never addressed on the merits at the appellate level. Plaintiff's failure to properly complete each step in the appeal process constitutes the failure to exhaust administrative remedies. *See Pozo,* 286 F.3d at 1025. As such, the Court finds that Plaintiff failed to provide prison officials the opportunity to address his concerns internally on the merits prior to filing this case and therefore failed to exhaust his administrative remedies in OSCI-2024-13127.

### 3.3 OSCI-2024-13311, OSCI-2024-14863, OSCI-2024-15109, OSCI-2024-15433, OSCI-2024-16137, and OSCI-2024-16431

Next, the Court collectively finds that that the following six complaints failed to exhaust Plaintiff's administrative remedies: OSCI-2024-13311, OSCI-2024-14863**,** OSCI-2024-15109, OSCI-2024-15433, OSCI-2024-16137**,** OSCI-2024-16431. The Court groups these complaints together because they were all procedurally rejected for similar reasons. As discussed above, inmate complaints that are "rejected" based on a procedural defect do not normally fulfill the exhaustion requirement. *See Conyers,* F.3d at 584.

An inmate complaint can be rejected if the "issue has already been addressed through the inmate's prior use of the ICRS." Wis. Admin. Code

§ DOC § 310.10(6)(g). Plaintiff's inmate complaints OSCI-2024-13311, OSCI-2024-14863, OSCI-2024-15109, OSCI-2024-15433, OSCI-2024-16137, and OSCI-2024-16431 were all rejected on this basis. *See* ECF No. 30 at 6-15. These complaints were all filed prior to the completion of OSCI-2024-13127 through the appeals process. *See id.* Following these rejections, Plaintiff sometimes appealed the rejection and sometimes did not. In OSCI-2024-13311, Plaintiff appealed the rejection and the appeal was rejected as untimely because it was filed more than ten days after the rejection. *See* ECF No. 31-4 at 3, 7, 11. Plaintiff's appeals in OSCI-2024-14863 and OSCI-2024-15109 were similarly rejected as untimely. *See* ECF No. 31-7 at 2-3, 5, 27; ECF No. 31-8 at 2-3, 5, 27. Plaintiff did not file an appeal of the rejection of OSCI-2024-15433, OSCI-2024-16137, and OSCI-2024-13127. *See* ECF No. 31-9; ECF No. 31-10; ECF No. 31-11.

In reviewing the rejection of Plaintiff's inmate complaints, the Court gives "deference to prison officials regarding interpretation and application of their own grievance procedures so long as the procedures provide inmates with a meaningful opportunity to present grievances." *See Jones v. Frank*, 07-cv-141-bbc, 2008 WL 4190322, at *3 (W.D. Wis. April 14, 2008). Based on the record before it, the Court does not conclude that the complaint examiner's interpretation and application of § 310.10(6)(g) to Plaintiff's grievances was "clearly erroneous, arbitrary or intended to prevent plaintiff from exercising his right of access to the courts." *See id.* Instead, based on the facts provided, it was reasonable that the examiner concluded that Plaintiff's repetitive complaints were all about the same issue raised in OSCI-2024-13127, which was still going through the inmate complaint process at the time of rejection. As such, the Court does not find that the rejection obstructed Plaintiff from obtaining a meaningful

opportunity to present his grievances. The Court therefore finds that Plaintiff did not properly exhaust his administrative remedies with respect to these six grievances.

### 3.4 OSCI-2024-14264

Next, the Court finds that OSCI-2024-14264 did not exhaust Plaintiff's administrative remedies because it failed to provide notice about any of the claims in this case. Plaintiff's one issue in this grievance provided, "Todd Gillingham[.] I want to audit the ICRS." ECF No. 31-5 at 12. This inmate complaint alleges that Gillingham was mishandling his grievances. *Id.* In this case Plaintiff was allowed to proceed on claims against Gillingham for knowingly keeping him past his release not, not for improperly handling grievances and not for a First Amendment retaliation claim. *See* ECF No. 9 at 10. As such, the Court finds that OSCI-2024-14264 did not provide notice to prison administrators about any of the claims in this case to allow them to address the issue prior to litigation. *See Schillinger*, 954 F.3d at 995. The Court therefore finds that OSCI-2024-14264 failed to exhaust Plaintiff's administrative remedies.

### 3.5 OSCI-2024-14693

Finally, the Court finds that OSCI-2024-14693 failed to exhaust Plaintiff's administrative remedies for the claims in this case. Plaintiff listed his one issue in this complaint as: "Sara Feltes refusing to notarize my petition for writ of habeas corpus. I want $10k for every day it takes to get notary." ECF No. 31-6 at 11. This information did not put prison staff on notice that Feltes was knowingly and deliberately keeping Plaintiff incarcerated past his release date or retaliating against him. In describing the details of the complaint, Plaintiff did include, in relevant part, that Feltes's failure to notarize the petition "prolongs my illegal incarceration."

*Id.* Plaintiff indicated that Feltes and supervisors failed to tell him to policy that prohibited the notarization but also indicated that "Sara told me I could try again next week." *Id.*

The question is whether the information in this grievance provided notice to prison staff of the claims at issue in this case. This is somewhat of a close call, but the Court finds *Schillinger v. Kiley* to be instructive on this issue. In *Schillinger*, the Seventh Circuit found that a state prisoner failed to exhaust all available administrative remedies because the complaint that he submitted to the prison was not specific enough. 954 F.3d at 996. The prisoner sued several prison officials for not protecting him from an attack by another inmate. *Id.* The applicable state law provided that "a prisoner must 'clearly identify the issue' in an inmate complaint," but it did not specify "what it takes to satisfy this requirement." *Id.* at 995. The prisoner's complaint mentioned none of the officials by name, nor did it show that any officials "had reason to know in advance that an attack might occur and failed to take appropriate measures to prevent it." *Id.* The Seventh Circuit therefore concluded that even though the inmate gave a thorough description of the incident, he did not put the prison on notice that he intended asserting a failure-to-protect claim. *Id.*

Applying that logic here, the Court finds that OSCI-2024-14693 failed to provide notice to the prison of the claims brought in this case. The Court is mindful of the fact that inmate complaints need not articulate legal theories or specifically name every individual defendant. *See Strong*, 297 F.3d at 650. The Court does not find, however, that Plaintiff's inmate complaint met the threshold requirement of putting the prison on notice of the claims in this case. The issue is not that the inmate complaint failed to specifically name defendants or legal theories, but rather that it failed to

articulate the facts of what Defendants allegedly did wrong. Plaintiff's inmate complaint involved Feltes's alleged failure to immediately notarize a document for him and that her failure to do so was prolonging his incarceration—not that Feltes or any other official knew about his illegal imprisonment and nonetheless failed to act. Plaintiff's inmate complaint therefore did not give prison officials the opportunity to resolve his issues prior to this litigation. As such, the Court finds that OSCI-2024-14693 failed to exhaust Plaintiff's administrative remedies as to the claims at issue.

In sum, the Court finds that Plaintiff failed to provide prison officials the opportunity to address his concerns internally on the merits prior to filing this case, and he therefore failed to exhaust his administrative remedies. This case is somewhat difficult because it is clear that Plaintiff was attempting to exhaust his administrative remedies, and his ten attempts at exhaustion show it can be difficult for incarcerated individuals to comply with the exhaustion procedures. However, the Seventh Circuit has instructed that in order to properly exhaust, a prisoner must file his complaints precisely in accordance with the prison's administrative rules; substantial compliance does not satisfy the PLRA. *Pozo*, 286 F.3d at 1025. As such, the Court is obliged to grant Defendants' motion for summary judgment based on Plaintiff's failure to exhaust his administrative remedies. The Court will further grant summary judgment with respect to Toddish and the John Doe defendant as discussed above. *See* Fed. R. Civ. P. 56(f)(1). The Court will accordingly dismiss this case without prejudice. *See Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) (finding all exhaustion dismissals should be without prejudice).

## 4.    CONCLUSION

For the reasons explained above, the Court will grant Defendants' motion for summary judgment. Plaintiff failed to exhaust his administrative remedies with respect to the claims in this case and the Court accordingly dismisses this case without prejudice.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for summary judgment, ECF No. 10, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Defendants' motion for an extension of time, ECF No. 26, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion to amend the complaint, ECF No. 33, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment based on the exhaustion of administrative remedies, ECF No. 28, be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that this case be and the same is hereby **DISMISSED without prejudice** for Plaintiff's failure to exhaust administrative remedies**.**

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 27th day of January 2026.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge

This Order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **thirty (30)** days of the entry of judgment. See Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **twenty-eight (28)** days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See id.* A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.